**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION**

| | |
|---|---|
| **RICKEY CATES, individually and on behalf of all others similarly situated,** | **Civil Action No.** |
| **Plaintiff,** | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| **v.** | |
| **ALLIANCE COAL, LLC, ALLIANCE RESOURCE PARTNERS, L.P., ALLIANCE RESOURCES OPERATING PARTNERS, L.P., ALLIANCE RESOURCE MANAGEMENT GP, LLC, HAMILTON COUNTY COAL, LLC, and WHITE COUNTY COAL, LLC.** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Rickey Cates through his undersigned counsel, individually, and on behalf of all other similarly-situated persons, files this Collective and Class Action Complaint ("Complaint") against Defendants Alliance Coal, LLC, Alliance Resource Partners, L.P., Alliance Resources Operating Partners, L.P., Alliance Resource Management GP, LLC,  Hamilton County Coal, LLC, and White County Coal, LLC (collectively, "Defendants"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and Illinois state law.

Plaintiff asserts his FLSA claims as a collective action under FLSA Section 16(b), 29 U.S.C. § 216(b) and asserts his state law claims as a class action under Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

**INTRODUCTION**

1.      This is an action brought on behalf of individuals who are current and former coal miners employed by Defendants, challenging Defendants' unlawful failure to pay for "off-the-clock" work in violation of the FLSA and state law as well as Defendants' failure to pay all overtime, including by unlawfully excluding promised, non-discretionary bonuses in the calculation of the employees' "regular rate" for the purpose of determining the appropriate overtime rates of pay.

2.      Defendants Alliance Coal, LLC, Alliance Resource Partners, L.P., Alliance Resources Operating Partners, L.P., Alliance Resource Management GP, LLC, Hamilton County Coal, LLC, and White County Coal, LLC (collectively, "Defendants") operated as joint employers of Plaintiff and all employees who worked as miners in Defendants' Hamilton Mining Complex in Hamilton County, Illinois and Pattiki Complex in White County, Illinois ("Illinois Mines"), and Defendants' policies and practices deprived Plaintiff and similarly situated coal miners for all pay that they were and are entitled to by law.

**JURISDICTION AND VENUE**

3.      Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.      Pursuant to Fed. R. Civ. P. 4(k)(1)(A), 735 Ill. Comp. Stat § 5/2-209, and federal due process, the Court has general and specific personal jurisdiction over all Defendants. All Defendants maintain continuous and systematic contacts with Illinois, as they all jointly operate the Hamilton Coal Mine and Pattiki Mine located therein. Defendants Alliance Coal, LLC ("Alliance"), Alliance Resource Operating Partners, L.P, ("AROP"), Alliance Resource Management GP, LLC ("ARM"), and Alliance Resource Partners, L.P. ("ARLP") (ARLP, AROP, ARM and Alliance are

together the "Parent Defendants") are the parent entities that own and control each of the Subsidiary Defendants Hamilton County Coal, LLC and White County Coal, LLC (the "Subsidiary Defendants"). Defendants operate as essentially the same entity, and the Parent Defendants have implemented all policies, protocols, guidelines, and internal monitoring systems used in the Illinois Mines. All Defendants have availed themselves of Illinois, because they have regularly conducted business in Illinois, and because the FLSA violations occurred in Illinois.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in Illinois, and a substantial part of the events giving rise to Plaintiff's and Class Members' claims occurred within this judicial District and Division. Defendants conduct business in this judicial District and Division. Specifically, the Parent Defendants own and operate the Subsidiary Defendants, and employed Plaintiff and similarly situated coal miners at the Illinois Mines, who are the subject of the alleged unlawful pay practices.

6.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, because those claims derive from a common nucleus of operative facts.

### **PARTIES**

7.      Plaintiff Rickey Cates is a resident of Galatia, Illinois. Plaintiff was employed by Defendants as a coal miner in Defendants' Illinois Mines (Hamilton County Coal, LLC and White County Coal, LLC) in Hamilton County, Illinois and White County, Illinois from approximately 2010 until February 2020. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a plaintiff in this action. *See* Exhibit A.

8.      Defendant Alliance Coal, LLC is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business being located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

9.      Defendant Alliance Resource Partners, L.P. is a for-profit limited partnership organized under the laws of the state of Delaware, with its principal place of business being located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

10.     Defendant Alliance Resource Operating Partners, L.P. is, upon information and belief, a for-profit limited partnership organized under the laws of the state of Delaware, with its principal place of business being located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

11.     Defendant Alliance Resource Management GP, LLC is, upon information and belief, a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business being located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

12.     Defendant Hamilton County Coal, LLC ("Hamilton County Coal") operates the Mine No. 1 in the Illinois Mines, which is an underground longwall mine that produces high-sulfur coal from the Herrin No. 6 seam. Hamilton County Coal is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business at 18033 County Rd 500 E, Dahlgren, Illinois 62828.

13.     Defendant White County Coal, LLC ("White County Coal") operated the Pattiki Mine in the Illinois Mines, which is an underground longwall mine that produces high-sulfur coal. White County Coal is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business at 1525 County Rd 1300 N, Carmi, IL 62821.

14.     Defendants Alliance Coal, ARLP, AROP, and ARM (collectively "Parent Defendants") are the parent entities that own and control the Subsidiary Defendants Hamilton County Coal, LLC and White County Coal, LLC ("Subsidiary Defendants").

15.     Defendant ARLP owns 99.999% of Defendant AROP.

16.     Defendant AROP owns 99.999% of Defendant Alliance Coal.

17.     Upon information and belief, Defendants Hamilton County Coal, LLC and White County Coal, LLC are a wholly-owned subsidiaries of Alliance Coal, LLC (which is in turn a subsidiary of the other Parent Defendants), and its employment policies and procedures, described below, are uniformly established and directed by the Parent Defendants.

18.     Upon information and belief, each Parent Defendant exerted supervisory control over all employees of the Illinois Mines, and was involved in the daily operations of the business of the Illinois Mines and as it pertains to the policies, processes and procedures for the compensation of all such employees, as described in more detail below.

19.     Since 2010, Defendants have employed Plaintiff and numerous other similarly situated current and former employees at the Illinois Mines in non-exempt positions. As used herein, the term "non-exempt" refers to employees who work in positions that are not exempt from the protections of the FLSA and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat § 105/1 *et seq.*, and therefore, are entitled to be paid overtime compensation for work performed in excess of forty (40) hours per week.

20.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of the Defendants.

21.     Defendants employed Plaintiff and continue to employ similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d). *See also* 29 C.F.R. 791.2(a).

22.     During all times relevant, Plaintiff was an employee of Defendants and was covered by the FLSA and Illinois law.

23.     During all times relevant, Defendants are employers and/or enterprise covered by the FLSA.

24.     During all times relevant, each of the individual Defendant entities are employers covered by the FLSA and Illinois law.

25.     At all times material to this action, Defendants have been engaged in commerce or in the production of goods for commerce as defined by the FLSA, and Defendants' employees are engaged in interstate commerce and handle or work on goods that have been moved in and/or produced in commerce, as described by 29 U.S.C. §§ 206-207.

26.     Defendants' annual gross sales exceed $500,000.

## COLLECTIVE AND CLASS DEFINITIONS

27.     Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following proposed collective:

> All current and former non-exempt employees who performed work in underground mines or surface coal preparation plants at the Illinois Mines, and who were employed by Defendants between three years of the filing of this Complaint and the present (the "FLSA Collective").

28.     Plaintiff brings Counts II and III of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All current and former non-exempt employees who performed work in underground mines or surface coal preparation plants at the Illinois Mines, and who were employed by Defendants ten years of the filing of this Complaint[1] and the present (the "Illinois Class").

29.     The FLSA Collective and the Illinois Class are together referred to as the "Classes" and the members of the Classes are "Class Members."

---

[1] The statute of limitations on Plaintiff's Illinois Wage Payment and Collection Act claim under Pennsylvania law is ten (10) years. Accordingly, Count III of the Complaint goes back to ten years of the filing of this Complaint.

30.     The employees who constitute the FLSA Collective and the Illinois Class are referred to as "Coal Miners."

31.     Plaintiff reserves the right to redefine the Classes prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTUAL BACKGROUND

### A.     Defendants' Mining Operations and Operational Structure

32.     Defendants comprise and hold themselves out to be the single entity Alliance -- "the second largest coal producer in the eastern United States." *See* Alliance Coal, About Us, https://www.arlp.com/peer/about-us/default.aspx (last visited Mar. 16, 2021).

33.     Defendants operate seven underground mining complexes in West Virginia, Illinois, Indiana, Kentucky and Maryland.  These operations include the Illinois Mines.

34.     Each of the Defendants are joint employers of the Coal Miners, as Defendants' operations are interrelated and share common management. While the Subsidiary Defendants purport to operate the Illinois Mines, the Parent Defendants, ARLP, AROP and Alliance, control every significant aspect of their subsidiaries' coal mining operations.

35.     The Parent Defendants maintain operational control over the day-to-day functions of Plaintiff and the members of the Collective.

36.     In particular, the Parent Defendants jointly controlled and directed the employment policies and practices, including the illegal pay practices of their subsidiaries, by directing such subsidiaries to follow the uniform time-keeping and pay practices of the Parent Defendants, which the Parents Defendants applied uniformly to all of their subsidiaries and the subsidiaries' employees. Accordingly, each Parent Defendant was a joint employer of the Coal Miners who work at the Illinois Mines.

37.     Among other things, the Parent Defendants required their subsidiaries, including

the Illinois Mines, to utilize the Parent Defendants' proprietary time-keeping hardware and software system developed by another ARLP subsidiary, Matrix Design Group, LLC, as the exclusive means for its subsidiaries to record the time worked and to determine the times periods for which these subsidiaries would pay for work performed by their employees.

38.     Parent Defendants and Subsidiary Defendants are joint employers as: (1) each Subsidiary Defendants installed the same tracking system and time-keeping system provided by the Matrix Entities; (2) each Subsidiary Defendants chose, in the same way, to willfully ignore the data generated by that system regarding work performed prior to the scheduled beginning of shifts and instead pay workers only from the scheduled beginning of the shifts; (3) the data available to each Subsidiary Defendants were also available to Parent Defendants.

39.     In addition to exercising authority to hire, fire, discipline, and otherwise exercise payroll, scheduling and human-resources-related control over the Subsidiary Defendants, the Parent Defendants also exercised control over the pay rates and insurance benefits provided by the Subsidiary Defendants to their nominal employees.

40.     In addition, the Parent Defendants supervised the actual work performed by the nominal employees of the Subsidiary Defendants. For instance, the Subsidiary Defendants would receive directions from the Parent Defendants regarding how their workers should perform mining operations and in what direction workers should mine for coal.

41.     Upon information and belief, the Parent Defendants expressly supervise and control the policies and practices utilized by the Subsidiary Defendants to pay Plaintiff and Coal Miners, including the policies and practices alleged in this Complaint.

**B.     The Work Performed by Plaintiff and Coal Miners**

42.     Plaintiff and Class Members worked as Coal Miners in the Illinois Mines.

43.     Plaintiff and other Coal Miners are not members of a union.

44.     Plaintiff and Coal Miners work long hours on day and night shifts to keep the mines operating, and in order for Defendants to maximize their profits. Plaintiff typically worked five to seven days per week.

45.     The work that Plaintiff and other Coal Miners perform is hazardous and dangerous.

46.     The Supreme Court of the United States has long recognized the special difficulties involved in the job of mining coal as follows:

> Those who are forced to travel in underground mines in order to earn their livelihood . . . must journey beneath the crust of the earth, far removed from the fresh and open air and from the beneficial rays of the sun. … A heavy toll is exacted from those whose lot it is to ride and walk and mine beneath the surface. From the moment they enter the portal until they leave they are subjected to constant hazards and dangers; they are left begrimed and exhausted by their continuous physical and mental exertion.

Jewell Ridge Coal Corp. v. Loc. No. 6167, United Mine Workers of Am., 325 U.S. 161, 162 (1945).

47.     Plaintiff and Coal Miners routinely work more than forty hours in a workweek.

48.     Plaintiff and other Coal Miners were paid on an hourly basis at an agreed hourly rate, and in addition were entitled to be paid and were paid various types of bonuses.

49.     Plaintiff and other Coal Miners are not paid for all of the time that they spend performing work, including work performed both before and after their regularly scheduled shifts.

50.     Defendants required Plaintiff and Coal Miners to arrive to their work shifts sufficiently early to have time to don protective gear and be dressed and ready prior to the beginning of their shifts and to attend safety meetings prior to the beginning of their shifts.

51.     However, Defendants never paid Plaintiff and Coal Miners for the time spent working prior to beginning of their scheduled shift or for safety meetings; Defendants would only begin paying Plaintiff and Coal Miners for work at the scheduled beginning of their shifts.

52.     During the time that Plaintiff and Coal Miners were required to be present at the mine prior to the scheduled beginning of their shift, Plaintiff and Coal Miners routinely performed a variety of activities that constituted compensable work, including the following:

    a.     Retrieving specialized protective gear and clothing from lockers and/or buckets located at the mine's above-ground bathhouse;

    b.     Donning specialized protective equipment and clothing issued by the Defendants and required for the dangerous environment of an underground coal mine, including coveralls, boots, helmet, lamp, reflective gear, work belt, self-rescuer, text-pager tracking device, hearing protection, safety glasses, respirator, and gloves;

    c.     Gathering tools to be used during scheduled shift from an above-ground storeroom; and

    d.     Gathering materials to be used during scheduled shift also from an above-ground storeroom.

53.     In addition, at the end of each shift, Plaintiff and Coal Miners were required to perform the time-consuming task of doffing their specialized protective equipment, returning tools and supplies to the appropriate location, returning their gear to their lockers and readying equipment for use on future shifts. This work took a substantial amount of time.

54.     However, Defendants did not pay Plaintiff and Coal Miners for this time. Defendants stopped paying Plaintiff and Coal Miners at the time they came above-ground and did not pay them for doffing their specialized protective equipment or any other work.

55.     All of the pre-shift and post-shift work performed was an integral and indispensable part of the principal work activities of Plaintiff and Coal Miners.

56.     Defendants were aware that Plaintiff and Coal Miners performed this work before and after their shift, both because they required these activities to be performed and because they employed and had the ability to use sophisticated technology that provided detailed information to Defendants about the times that each employee reported to work prior to the scheduled beginning

10

of their shifts and performed work off the clock.

57.     Specifically, Defendants installed "tracker" devices capable of following and recording the exact location of each miner attached to each miner's helmet, and Defendants required the helmets to be worn by the miner at all times in the workplace. The tracking system is not merely capable of recording the current location of each miner's tracker device, but also is capable of recording and preserving in Defendants' data systems the exact time each miner moves to a new location.

58.     Although Defendants' system was capable of automatically recording the exact time when Plaintiffs and the Coal Miners would arrive at the facility to begin work, Defendants did not utilize that time for the purpose of paying Plaintiff and other Coal Miners.

59.     Rather, Defendants failed to pay any coal mining employees for their time expended in compensable activities prior to the scheduled beginning of the shift; and instead, Defendants would only pay Plaintiff and Class Members from the time that their shift was scheduled to begin.

**C.     Defendants Did Not Pay the Proper Overtime Owed to Plaintiff and Coal Miners**

60.     In addition to not paying Plaintiff and Coal Miners for time spent working before and after their shifts, Defendants also failed to pay Plaintiff and similarly situated employees the appropriate overtime rate of compensation for overtime work performed.

61.     Plaintiff and similarly situated employees were paid several forms of bonus compensation that were not discretionary, and therefore, should have been included in their "regular rate" of compensation for determining their overtime rate of compensation.

62.     Upon information and belief, Defendants provided their employees a "*Benefits Handbook*," which described certain bonus compensation to which Plaintiff would be entitled as

part of Plaintiff's compensation for his work for Defendants.

63.    Non-discretionary bonuses included, among others:

    a.    An annual Attendance Incentive Bonus;

    b.    A New Electrical Certification bonus;

    c.    A New Mine Foreman certification bonus;

    d.    An annual Emergency Medical Technician Certification Bonus;

    e.    An annual Mine Emergency Technician Certification Bonus;

    f.    An annual seniority days bonus starting at each employee's sixth year of service, giving a bonus of one "day" or eight (8) hours of regular pay in the first year of eligibility, and with an additional 8 hours of pay accruing each year (with the maximum accrual being twenty (20) days);

    g.    A Weekly Production Bonus based on productivity and man hours, utilizing a formula that took into account the amount of coal mined during the week in the mine in question, the percentage of the coal mined which was "clean," the number of employee hours expended to mine the coal, and similar objectively-quantifiable facts;

    h.    A Safety Incentive Bonus that was calculated based on a formula derived from objective data.

64.    Defendants paid these bonuses to Plaintiff and similarly situated employees, but they failed to include such bonuses in the "regular rate" used to calculate the overtime rate of pay for Plaintiff and similarly situated employees in the weeks that the bonuses were paid. Defendants' failure to include such bonuses resulted in Plaintiff and similarly situated employees receiving lower overtime rates than they were owed for the weeks in which the bonuses were paid.

65.    These bonuses should have been included in calculating employees' overtime rates of pay.

66.    Additionally, the Plaintiff and similarly situated employees were not compensated for the full amount of overtime that they were owed each week, because, upon information and belief, Defendants included a type of implicit overtime premium it referred to as the "boosted

hours method" in the formula used to calculate two types of bonuses (production and safety bonuses), but this formula did not compensate Plaintiff and similarly situated employees for the full overtime premium owed because the number of hours used by Defendants in the "boosted hours" formula was based on the number of hours Defendants credited the employees with working and therefore did not include all time worked as described above.

67.     Defendants knew or should have known that the work that they required of Plaintiff and other Coal Miners should have been paid for all time worked before and after their regularly scheduled shift under the FLSA.

68.     Defendants knew or should have known that the non-discretionary bonuses that they paid should have been properly incorporated into the regular rate for purposes of calculating overtime compensation under the FLSA.

69.     Defendants are sophisticated national businesses with access to knowledgeable human resource specialists and competent labor counsel.

70.     Defendants do not maintain accurate records of the actual hours that Plaintiff and Coal Miners worked each workday and the total hours worked each workweek.

71.     Defendants have acted willfully and with reckless disregard of clearly applicable FLSA and state law wage and hour provisions by failing to compensate Plaintiff and Coal Members for all hours worked in excess of forty (40) during the workweeks.

## COLLECTIVE ACTION ALLEGATIONS

72.     Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

73.     Plaintiff desires to pursue their FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

74.     Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to the Defendants' previously described common pay and timekeeping practices and, as a result of such practices, were not paid the full and legally mandated minimum wage for non-overtime hours and overtime premium for hours worked over forty (40) during the workweek.  Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

75.     The FLSA Collective Members have the same or closely similar job duties as the Plaintiff, and all Plaintiff and Collective Members were paid by Defendants in the same manner, in violation of the FLSA.  Accordingly, the named Plaintiff is similarly situated to all FLSA Collective Members.

76.     Plaintiff and the FLSA Collective performed the same type of work, the manner and terms of which were controlled by the Defendants, and were not paid for all time worked or at the proper overtime rate as required by federal law.

77.     The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records.

78.     Defendants employ many FLSA Collective Members throughout Illinois.  These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

79.     Plaintiff incorporates by reference the foregoing allegations as if set forth herein.

80.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Illinois Class defined above.

81.     The members of the Illinois Class are so numerous that joinder of all members is impracticable.  Upon information and belief, there are more than 100 members of the Illinois Class.

82.     Defendants have engaged in the same conduct towards Plaintiff and the other members of the Illinois Class.

83.     The injuries and damages to the Illinois Class present questions of law and fact that are common to each class member within the Illinois Class, and that are common to the Illinois Class as a whole.

84.     Plaintiff will fairly and adequately represent and protect the interests of the Illinois Class, and all of its putative class members because there is no conflict between the claims of Plaintiff and those of the Illinois Class, and Plaintiff's claims are typical of the claims of the Illinois Class.

85.     Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

86.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Illinois Class predominate over any questions affecting only individual Class members including, without limitation: (1) whether Defendants paid them for all time worked; and (2) whether Defendants' failed to pay them the full amount of overtime compensation earned.

87.     Plaintiff's claims are typical of the claims of the Illinois Class in the following

ways, without limitation: (a) Plaintiff is a member of the Illinois Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Illinois Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Illinois Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Illinois Class members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Illinois Class members.

88.   Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  The Illinois Class is readily identifiable from Defendants' own employment records.  Prosecution of separate actions by individual members of the Illinois Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

89.   A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical.  Further, the amounts at stake for many of the Illinois Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

90.   Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Illinois Class.  Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## Violation of the FLSA
## (On Behalf of Plaintiff and the FLSA Collective Against All Defendants)

91.     All previous paragraphs are incorporated as though fully set forth herein.

92.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

93.     Defendants are subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

94.     At all relevant times, each of the Defendants were, and continue to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

95.     Alternatively, Defendants are subject to the wage requirements of the FLSA because the Defendants are joint employers pursuant to the FLSA. *See* 29 C.F.R. § 791.2.

96.     During all relevant times, the members of FLSA Collective, including Plaintiff, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

97.     Plaintiff and the FLSA Collective are not exempt from the requirements of the FLSA.

98.     Plaintiff and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek.

99.     Defendants' compensation scheme applicable to Plaintiff and the FLSA Collective failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

100.     Defendants knowingly failed to compensate Plaintiff and the FLSA Collectives at

a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week.

101.     Defendants also failed to create, keep and preserve records with respect to work performed by Plaintiff and the FLSA Collectives sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

102.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

103.     Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT II**
**Violation of the Illinois Minimum Wage Law**
**(On Behalf of Plaintiff and the Illinois Class Against All Defendants)**

104.     All previous paragraphs are incorporated as though fully set forth herein.

105.     The Illinois Minimum Wage Law ("IMWL") entitles covered employees to overtime compensation of not less than one and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of forty (40) in one workweek.  *See* 820 Ill. Comp. Stat § 105/4a(1).

106.     Defendants are subject to the IMWL's overtime requirements because each Defendant is an employer under 820 Ill. Comp. Stat § 105/3(c).

107.     During all relevant times, Plaintiff and the Illinois Class were covered employees entitled to the above-described IMWL protections.  *See* 820 Ill. Comp. Stat. § 105/3(d).

108.    Plaintiff and the Illinois Class are not exempt from the IMWL.

109.    Plaintiff and the Illinois Class routinely worked in excess of 40 hours per week.

110.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the IMWL. *See* 820 ILCS § 115/1 *et seq*.

111.    Defendants' failure to pay compensation as described above has been willful and/or in bad faith.

112.    Defendants knowingly failed to compensate Plaintiff and the Illinois Class for all hours worked and hours worked in excess of forty (40) hours in a workweek, in violation of the IMWL.  *See* 820 Ill. Comp. Stat. § 105/4a(1).

113.    Pursuant to 820 Ill. Comp. Stat. § 105/12(a), employers such as Defendants who fail to pay an employee wages in conformance with the IMWL, shall be liable to the employee for, *inter alia*, unpaid wages for three years prior to the filing of the lawsuit, punitive damages in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs.

**COUNT III**
**Violation of the Illinois Wage Payment and Collection Act**
**(On Behalf of Plaintiff and the Illinois Class Against All Defendants)**

114.    All previous paragraphs are incorporated as though fully set forth herein.

115.    The Illinois Wage Payment and Collection Act ("IWCPA") requires employers to pay employees within 13 days after the end of a semi-monthly or bi-weekly pay period or within seven days after a weekly pay period in full at the lawful rate. *See* 820 Ill. Comp. Stat. § 115/4.

116.    If an employer fails to pay an employee all wages earned by the statutory deadline, the employee may commence a civil action to recover the amount of any underpayment and damages in the amount of two percent (2%) of each underpayment compounded monthly, plus

costs and reasonable attorneys' fees. *See* 820 Ill. Comp. Stat. § 115/14.

117.    Pursuant to 735 Ill. Comp. Stat. § 5/13-206, the statute of limitations applicable to the IWPCA is ten years after accrual of the cause of action.

118.    Plaintiff and the Illinois Class are employees for purposes of the IWPCA. *See* 820 Ill. Comp. Stat. § 115/2.

119.    Each Defendant is an employer for purposes of the IWPCA. *See* 820 Ill. Comp. Stat. § 115/2.

120.    Defendants' actions, policies and/or practices as described above violate the IWPCA by failing to compensate Plaintiff and the Illinois Class for hours worked in excess of 40 in a week at one-and-one-half times their regular rate.

121.    As a direct and proximate result of this practice, Plaintiff and the Illinois Class have suffered loss of income and other damages to be determined at trial.

122.    As such, Plaintiff and the Illinois Class are entitled to the underpayment, damages in the amount of two percent (2%) compounded monthly, and reasonable attorneys' fees and costs. *See* 820 Ill. Comp. Stat. § 115/14

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

   a.    An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

   b.    An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Illinois Class;

   c.    Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

   d.    Back pay damages (including unpaid overtime compensation, unpaid

spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

e.      Liquidated damages to the fullest extent permitted under the law;

f.      Punitive damages as permitted under the law;

g.      Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

h.      Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury for all issues of fact.

Dated: April 9, 2021                    Respectfully submitted,


                                        */s/ Katrina Carroll*
                                        Katrina Carroll
                                        CARLSON LYNCH
                                        111 W. Washington Street, Suite 1240
                                        Chicago, IL 60602
                                        Telephone: (312) 750-1265
                                        kcarroll@carlsonlynch.com

                                        Mark N. Foster, *pro hac vice forthcoming*
                                        Law Office of Mark N. Foster, PLLC
                                        P.O. Box 869
                                        Madisonville, KY 42431
                                        Telephone: (270) 213-1303
                                        Mfoster@MarkNFoster.com


                                        Shanon J. Carson, *pro hac vice forthcoming*
                                        Camille Fundora Rodriguez, *pro hac vice forthcoming*
                                        BERGER MONTAGUE PC
                                        1818 Market Street, Suite 3600
                                        Philadelphia, PA 19103
                                        Telephone: (215) 875-3000
                                        Facsimile: (215) 875-4620
                                        scarson@bm.net
                                        crodriguez@bm.net

Sarah R. Schalman-Bergen, *pro hac vice forthcoming*
Olena Savytska, *pro hac vice forthcoming*
Thomas Fowler, *pro hac vice forthcoming*
Krysten L. Connon, *pro hac vice forthcoming*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
ssb@llrlaw.com
osavytska@llrlaw.com
tfowler@llrlaw.com
kconnon@llrlaw.com

Eric Lechtzin, *pro hac vice forthcoming*
Liberato Verderame, *pro hac vice forthcoming*
EDELSON LECHTZIN LLP
3 Terry Drive, Suite 205
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com
lverderame@edelson-law.com

John R. Kleinschmidt, III, *pro hac vice forthcoming*
The Law Offices of John R. Kleinschmidt III, PLLC
P.O. Box 1746
Lexington, KY 40588
Telephone: (859) 866-3097
john@employmentlawky.com

*Attorneys for the Plaintiff and the*
*Proposed FLSA Collective and Illinois Class*