**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **RICKEY CATES, individually and on behalf of all others similarly situated,** | **Civil Action No. 3:21-cv-00377** |
| **Plaintiff,** | |
| **v.** | |
| **ALLIANCE COAL, LLC, ALLIANCE RESOURCE PARTNERS, L.P., ALLIANCE RESOURCES OPERATING PARTNERS, L.P., ALLIANCE RESOURCE MANAGEMENT GP, LLC, HAMILTON COUNTY COAL, LLC, and WHITE COUNTY COAL, LLC.** | |
| **Defendants.** | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE PURSUANT TO
<u>SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION..............................................................................................................1

II.    FACTUAL BACKGROUND ...........................................................................................6

III.   ARGUMENT ...................................................................................................................10

       A.     The Lenient Standard for Conditional Certification under the FLSA......................10

       B.     Plaintiff has Amply Met his Burden of Production and has a Made a Modest Factual
              Showing that a Group of Similarly Situated Individuals Exist...............................12

       C.     Plaintiff's Proposed Notice and Plan of Distribution is Proper ...........................16

IV     CONCLUSION ................................................................................................................19

## I.     INTRODUCTION

Plaintiff Rickey Cates hereby moves this Court for an order granting conditional certification and allowing judicial notice of this action to be provided to potential collective action members informing them of their right to opt in to this case under Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*[1] Plaintiff worked as a coal miner in Illinois, working at the Pattiki Complex and Hamilton County Complex (the "Illinois Mines"), owned and operated by the Defendants.[2] Plaintiff and those similarly situated were not paid for off-the-clock work and did not receive time-and-a-half for hours worked in excess of 40 a week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*[3] The proposed FLSA collective for whom Plaintiff seeks conditional certification is comprised of all current and former non-exempt employees who performed work in underground mines or surface coal preparation plants in Illinois, and who were employed by Defendants between April 9, 2018 and the present ("Coal Miners").

The work that Plaintiff and other Coal Miners perform is hazardous and dangerous. The Supreme Court has long recognized the special difficulties involved in the job of mining coal as follows:

---

[1] A proposed Notice is attached hereto as **Exhibit A**. A proposed opt-in form is attached hereto as **Exhibit B**.

[2] Plaintiff has alleged that Defendant Alliance Coal, LLC and its related entities and subsidiaries jointly own and operate the two coal mines in Illinois, the Pattiki Complex and Hamilton County Complex. Defendant Alliance Coal, LLC, a subsidiary of Alliance Resource Partners, LLC and Alliance Resource Operating Partners, LLC, owns 100% of the interest in Defendants Hamilton County Coal, LLC and White County Coal, LLC. *See* Complaint, Dkt. 1, ¶ 17.

[3] Plaintiff also brings class claims under Rule 23 against Defendants under the Illinois Wage Payment and Collection Act (IWPCA) and the Illinois Minimum Wage Law (IMWL). These claims are not at issue for purposes of the instant Motion.

> Those who are forced to travel in underground mines in order to earn their livelihood . . . must journey beneath the crust of the earth, far removed from the fresh and open air and from the beneficial rays of the sun. . . . A heavy toll is exacted from those whose lot it is to ride and walk and mine beneath the surface. From the moment they enter the portal until they leave they are subjected to constant hazards and dangers; they are left begrimed and exhausted by their continuous physical and mental exertion.

*Jewell Ridge Coal Corp. v. Loc. No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 162 (1945). The work that Plaintiff and the Coal Miners perform is also largely uniform—the Coal Miners prepare to go into the mines together, they go into the mines together, they work in the mines together, they come out of the mines together, and they perform their required post-shift work tasks after they leave the mines together.

Counsel for Plaintiff represent Coal Miners in five other pending actions against Alliance Coal and its subsidiaries alleging similar allegations of non-payment of wages as in this matter at the other mines that Defendants operate in the states where those mines are operated.[4]  Each of these cases involves the same parent Defendants and alleges that the Defendants failed to pay mine workers for pre and post shift work, and failed to incorporate bonuses into the mine workers' regular rate of pay.

In the *Branson v. Alliance Coal* case, alleging nearly identical facts with regard to three mining complexes operated by Alliance Coal in the Western District of Kentucky, the district court has already determined that conditional certification was proper and ordered that notice should

---

[4] *See Branson v. Alliance Coal, LLC*, No. 4:19-cv-155, Dkt. 23 (W.D. Ky. Jan. 23, 2020) (Warrior, River View and Dotiki Mines), attached hereto as Ex. C; *Brewer v. Alliance Coal, LLC*, No. 7:20-cv-00041-DLB, Dkt. 1 (E.D. Ky. Mar. 27, 2020) (MC Mining/ Excel Mines), attached hereto as Ex. D; *Johnson v. Alliance Coal, LLC*, No. 21-C1-157 (Hopkins Co. Cir. Ct. Feb. 21, 2021) (Seebree-Onton Complex Mine and Elk Creek Mine), attached hereto as Ex. E; *Rettig v. Alliance Coal, LLC*, No. 2:21-cv-00008-TSK, Dkt. 1 (N.D.V.W. Apr. 6, 2021) (Mettiki and Tunnel Ridge Mines), attached hereto as Ex. F; *Prater v. Alliance Coal*, LLC, No. 3:21-cv-66, Dkt. 1 (S.D. Ind. Apr. 13, 2021) (Gibson North and South Mines), attached hereto as Ex. G.

promptly issue.[5] Notice has been issued to more than 1,500 miners who worked at those three mining complexes. Likewise, in the *Brewer v. Alliance Coal* case, the court granted conditional certification this week, finding that miners who worked at Alliance Coal's MC Mining Complex in Kentucky are similarly situated.[6] The same result should follow here, so that individuals have the opportunity to learn about and join the lawsuit to toll the statute of limitations on their FLSA claims.

Plaintiff easily meets the lenient evidentiary burden required for conditional certification and issuance of notice under 29 U.S.C. § 216(b). Plaintiff is entitled to issue notice at an early stage of an FLSA suit, as long as he is able to make "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Girolamo v. Community Physical Therapy & Associates, Ltd.*, 2016 WL 3693426, at *2 (N.D. Ill. July 12, 2016) (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). A conditional class may be certified if plaintiff makes the "modest showing" required by law even if "[t]he majority of defendants' arguments may indeed support eventual 'decertification' at the second stage." *Id.* (quoting *Bastian v. Apartment Investment and Management Co.*, 2007 WL 5234235, at *1 (N.D. Ill. Sept. 17, 2007)). "Courts apply the similarly situated requirement 'leniently,' and 'typically' conditionally certify a representative class." *Slaughter v. Caidan Mgt. Co., LLC*, 317 F. Supp. 3d 981, 988 (N.D. Ill. 2018) (quoting *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010)); *Solsol v. Scrub, Inc.*, 2015 WL 1943888, at *2 (N.D. Ill. Apr. 27, 2015) (internal citations omitted)).

"At the initial 'notice stage,' the court does not consider the merits of the named plaintiff's

---

[5] *Branson v. Alliance Coal, LLC*, No. 4:19-cv-00155-JHM, 2021 WL 1550571 (W.D. Ky. Apr. 20, 2021), attached hereto as Ex. H.
[6] *Brewer v. Alliance Coal, LLC*, No. 7:20-cv-00041-DLB, 2021 WL 3057379, Dkt. 89 (E.D. Ky. July 20, 2021), attached hereto as Ex. I.

claims, determine credibility, or consider opposing evidence presented by a defendant." *Shumate v. Genesco, Inc.*, No. 17-cv-03574-RLY-MPB, 2018 WL 259942, at *2 (S.D. Ind. Jan. 2, 2018) (Young, J.) (quoting *Bergman v. Kindred Healthcare, Inc*., 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013)). "Instead, it analyzes the pleadings and any affidavits to determine whether a modest showing has been made." *Shumate*, 2018 WL 259942 at *2. Moreover, "a plaintiff seeking conditional certification need not meet the evidentiary standards of Federal Rule of Civil Procedure 56." *Id. at* *3. Rather, "'it is sufficient that Plaintiff ha[s] shown that [Defendants have a policy] applied uniformly to all potential plaintiffs and that the policy appears to be inconsistent with FLSA regulations.'" *Id. at* *4 (quoting *Binissia v. ABM Indus., Inc.*, No. 13 C 1230, 2014 WL 793111, at *5 (N.D. Ill. Feb. 26, 2014)). Even "[a] conclusory allegation of willfulness 'is sufficient to justify providing notice to the putative class on the basis of the potentially applicable three-year period.'" *Id*. (quoting *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593, at *5 (N.D. Ill. Sept. 30, 2013)).

As the Supreme Court has recognized, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, . . . who in turn become parties to a collective action only by filing written consent with the court[.]" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (citations omitted). Plaintiffs and other Coal Miners who worked for Defendants have been required to perform unpaid off-the-clock work, and have not received time-and-a-half for all overtime compensation as a result of Defendants' compensation policies. Defendants' "common policies" have harmed Plaintiffs and the collective action members in a similar manner, and conditional certification is proper. *See*, *e.g.*, *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 757 (N.D. Ill. 2011) (granting conditional certification in off-the-clock case where the "[plaintiffs' evidence] suggests that the workday begins as soon as an employee

4

clocks in, and continues until he or she clocks out. To the extent employees did not clock in exactly 7 minutes early or clock out exactly 7 minutes after their shifts ended on each and every day, a review of the time cards should reveal how much overtime the employee is entitled to each week."); *Branson*, 2021 WL 1550571, at *5 ("Plaintiffs have made a modest factual showing" that "all employees needed to don (and doff) their mining gear before (and after) their shifts and . . . needed to be ready fifteen minutes early." (citations and quotations omitted)).[7]

Notice in this case should issue as soon as possible. Unlike in a Rule 23 class action, a collective action under the FLSA is not "commenced" for opt-in plaintiffs (and the limitations period is not tolled) until his or her "written consent [to join the action] is filed in the court in which the action was commenced." 29 U.S.C. § 256(b); *see also* 29 U.S.C. § 257 (The "statute of limitations [of] such action shall be considered to have been commenced as to [an opt-in plaintiff] when, and only when, his written consent to become a party plaintiff to the action is filed in the court in which the action was brought."); *Madden*, 2009 WL 4757269, at *1 ("Collective actions

---

[7] Courts in this Circuit routinely grant motions for conditional certification in off-the-clock cases. *See Girolamo*, 2016 WL 3693426, at *4 (certifying group of therapy assistants and physical therapists); *Bell v. PNC Bank, Nat. Ass'n.*, 800 F.3d 360, 375 (7th Cir. 2015) (stating "We conclude therefore, that the question 'Did PNC have an unofficial policy or practice that required employees class-wide to work off-the-clock overtime hours?' is indeed a common one that is capable of class-wide resolution."); *Wiyakaska v. Ross Gage, Inc.*, 2011 WL 4537010, at *5 (S.D. Ind. Sept. 28, 2011) (conditionally certifying collective of hourly production workers that have worked off-the-clock hours); *Madden v. Corinthian Colleges, Inc.*, 2009 WL 4757269, at *2 (N.D. Ill. Dec. 8, 2009) ("Courts in this district regularly allow Plaintiffs to pursue collective actions under the FLSA where they allege that an employer has an unwritten policy requiring its employees to perform uncompensated work 'off the clock.'"); *Swarthout v. Ryla Teleservices, Inc.*, 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (granting conditional certification to group of call center workers baed on off-the-clock claims); *Howard v. Securitas Sec. Services, USA Inc.*, 2009 WL 140126, at *9 (N.D. Ill. Jan. 20, 2009) (conditionally certifying collective of security guards based on off-the-clock allegations); *Russell v. Illinois Bell Tele. Co.*, 575 F. Supp. 2d 930 (N.D. Ill. 2008) (conditionally certifying group of call center workers); *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) (granting conditional certification to hourly workers alleging off-the-clock claims).

under § 216(b) of the FLSA differ from Fed.R.Civ.P. 23 class actions in that potential participants in a FLSA collective action must join the action by 'opting-in'"). As the Supreme Court explained in *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 172-73 (1989), the issuance of early notice helps the court manage the case, allowing it to "ascertain the contours of the action at the outset."

This Court should grant Plaintiff's motion for conditional certification and allow notice to issue to other coal miners at the Illinois Mines because, as set out below, Plaintiff has met his burden of making a modest factual showing that the Defendants have a common policy of (1) requiring mine workers to perform unpaid work off the clock, and (2) paying the mine workers less than one-and-a-half times their hourly rate for hours worked in excess of 40 a week.

In connection with conditional certification, Plaintiff is entitled to discover the names, addresses, telephone numbers, email addresses, and dates of employment of similarly situated employees to inform them of this pending action. *See Nehmelman*, 822 F. Supp. 2d at 767 (finding plaintiff was entitled to discover the names, addresses, and telephone numbers of potential class members); *Shumate*, 2018 WL 259942 at *5 (plaintiff "is entitled to discover the names, addresses, telephone numbers, email addresses, and dates of employment of similarly situated employees to inform them of this pending action."); *Knox v. Jones Grp*., 208 F. Supp. 3d 954, 963-64 (S.D. Ind. 2016) (noting that "nowadays, communication through email is the norm") (citation omitted).

## II.     FACTUAL BACKGROUND

Defendants comprise and hold themselves out to be a single entity—Alliance—"the second largest coal producer in the eastern United States." *See* Dkt. 1 ¶ 27-31; Ex. J, "About Us", Alliance Resource Partners, LP., available at https://www.arlp.com/peer/about-us/default.aspx (last accessed June 18, 2021). Alliance Resource Partners, LP's website states: "[w]e are currently the second-largest coal producer in the eastern United States with seven underground mining

complexes in Illinois, Indiana, Kentucky, Maryland, Pennsylvania, and West Virginia as well as a coal-loading terminal in Indiana on the Ohio River. We manage and report our coal operations primarily under two regions, Illinois Basin and Appalachia." *Id.* As described above, Coal Miners have brought separate lawsuits alleging similar violations of the FLSA involving Alliance Coal's mines in Illinois, Indiana, Kentucky, and West Virginia. *See supra* note 3; Exs. C-G. Each lawsuit, including the instant case, alleges that Defendants acted as joint employers and actually operate as one unified entity. *Id. See also* Compl., Dkt. No. 1 at ¶¶ 2, 18, 32-38; Ex. U (press releases regarding Hamilton County operations where CEO Joseph W. Craft III announces acquisition of new mine).[8]

This lawsuit concerns Defendants' Illinois Mines— the Pattiki Complex and Hamilton County Complex. Dkt. 1; *see also* Ex. K, "Mines & Facilities," Alliance Resource Partners, LP., available at https://www.arlp.com/mines-facilities/mines-facilities/default.aspx (last accessed June 22, 2021). Defendants own and operate operated the Pattiki Complex and Hamilton County Complex in Illinois. *See* Dkt. 1, ¶ 4.

---

[8] Defendants have raised challenges to personal jurisdiction of the Parent Alliance Coal entities, which Plaintiff will oppose pursuant to the timelines set by the Court. Nothing about these challenges should be used as an argument to delay sending notice to Coal Miners who worked at the Illinois Mines, especially here, where the statute of limitations continues to run until individuals are provided with notice of the lawsuit and an opportunity to join. Moreover, each of the three courts to have previously decided similar tactics by Alliance Coal have been rejected and/or viewed with skepticism. On July 1, 2021, the Hopkins Circuit Court of Kentucky denied AROP's motion to dismiss in its entirety, stating "this Court clearly has personal jurisdiction over the entire family of Alliance defendants named in this civil action, including Alliance Resource Operating Partners, L.P., due to the transaction of business within this Commonwealth giving rise to the claims of the Plaintiffs – namely the mining and sale of coal." *See Johnson v. Alliance Coal, LLC,* No. 21-CI-0157 (Hopkins Cir. Ct. Ky. Jul. 1, 2021), attached as Ex. R. *See also Branson v. Alliance Coal, LLC*, No. 4:19-cv-0155-JHM, 2021 WL 1031002 (W.D. Ky. Mar. 15, 2021) (denying motion to dismiss AROP for lack of personal jurisdiction without prejudice and ordering jurisdictional discovery); *Brewer v. Alliance Coal*, *LLC*, No. 7:20-cv-00041, 2021 WL 3057380, Dkt. 88 (E.D. Ky. July 20, 2021), attached hereto as Exhibit V (same).

Plaintiff Rickey Cates worked for Defendants at the Pattiki Complex until 2015 and at the Hamilton County Complex between 2015 and 2020. Cates Decl., Ex. L ¶ 4. Opt-in Danny Knight worked at the Hamilton Mining Complex between approximately December 2016 and April 2019. Knight Decl., Ex. M, ¶ 4. Coal Miners are all classified as non-exempt employees, and are not unionized.  Coal Miners are paid on an hourly basis for time that they work. Ex. S (pay statement of Plaintiff Cates showing hourly pay). As noted above, both Pattiki Complex and Hamilton County Complex are owned and operated by Alliance Coal by and through its various incorporated entities, and Alliance Coal has implemented uniform policies and protocols used in both these mines, as well as at other mines operated by Alliance Coal, particularly with regard to timekeeping. Dkt. 1, ¶¶ 32-38. Specifically, Alliance Coal implemented a uniform policy requiring mine workers to perform work off-the-clock before they descend into the mines and after they ascend from the mines. Dkt. 1 ¶¶ 49-54; Ex. L ¶¶ 7, 13, 15-16.

This uniform policy is not limited to the Illinois Mines, as apparent from each of the complaints attesting to similar policies and procedures at each of the other coal mines owned and operated by Defendant Alliance Coal and its related entities.  Evidence of this uniform policy is further supported by affidavits submitted by Defendants in cases involving other of Defendants' mines, where each foreman attests that timekeeping was performed by the foreman, who recorded time based on the Coal Miners' regular scheduled shifts. *See* Ex. N, *Brewer*, Dkt. 55-2, ¶ 8 (affidavit of Excel Mine general manager) ("At Excel, each foreman manually completes paper timesheets indicating the time worked by each person on his or her crew during the course of a shift[.]"); Ex. O, *Branson*, Dkt. 140-1, ¶¶ 6, 8 (affidavit of River View Mine general manager) ("River View's timesheets are completed by the respective foreman for each crew of workers . . . [t]ypically, the prepopulated entries on each time sheet default to the scheduled shift start time.");

8

Ex. P, *Branson*, Dkt. 140-2, ¶¶ 6, 8 (affidavit of Warrior Mine general manager) ("Warrior's timesheets are completed by the respective foreman for each crew of workers . . . [t]ypically, the prepopulated entries on each time sheet default to the scheduled shift start time."). At the Illinois Mines, Plaintiff and collective action members were also paid for their scheduled shifts, rather than the actual hours they worked/times they clocked in. Dkt. 1 ¶ 38; Ex. L ¶ 8; Ex. M ¶ 14.[9]

Upon arriving at the mine, Plaintiff and collective action members first go to the bathhouse to put on special protective clothing and put on protective gear including boots, work belt, helmet, lamp, reflective gear, hearing protection, safety glasses, respirator, and gloves. Dkt. 1 ¶ 52; Ex. L ¶ 8; Ex. M ¶ 10; see also Ex. T, Safe Job Standards handbook, at p. 5 (listing required personal protective equipment). Next, the mine workers go to other locations at the mine to gather additional materials, including a methane spotter, a light, and a radio for communication, and pick up any additional tools such as wrenches, pliers, hammers, channel locks, chisel, and torches. Dkt. 1 ¶ 52; Ex. L ¶ 11; Ex. M ¶ 11. Plaintiff and collective action members have to arrive at the mine sufficiently early to complete these tasks. Dkt. 1 ¶ 50; Ex. L ¶¶ 12, 16; Ex. M ¶ 9. These pre-shift activities take a half hour or more to complete. Ex. L ¶ 12; Ex. M ¶ 13.

At the end of their shifts, the mine workers have to take off their PPE, and put away their gear, and get equipment ready for future shifts. Dkt. 1 ¶ 53; Ex. L ¶ 13; Ex. M ¶ 15. These tasks were also uncompensated – the mine workers' paid shift stopped as soon as they came up from the mine. Dkt. 1 ¶ 54; Ex. L ¶ 13; Ex. M ¶ 15. These post-shift activities took approximately 20 minutes to complete. Ex. L ¶ 14; Ex. M ¶ 16.

---

[9] Defendants also required the mine workers to wear tracking devices on their hard hats, which tracked their location at all times and captured the time at which they entered and exited the mine. As set out in Plaintiff's Complaint, Defendants could have used this technology to accurately capture the actual times at which mine workers started and stopped working. *See* Dkt. 1 ¶ 38.

In addition, while Defendants paid Plaintiff and collective action members bonuses, including a safety bonus and a royalty bonus, these bonuses were not factored into the workers' hourly rate of pay for purposes of determining their overtime compensation. Dkt. 1 ¶¶ 61-64; Ex. L ¶ 18; Ex. M ¶ 18. As a result, Plaintiff and the opt-ins were not paid time-and-a-half for hours worked in excess of 40 a week as required by the FLSA.

## III.    ARGUMENT

### A.      The Lenient Standard for Conditional Certification under the FLSA

The FLSA allows workers to bring an action on a collective basis for themselves "and other employees similarly situated." 29 U.S.C. § 216(b). While the FLSA does not define the term "similarly situated," courts "in this district and around the country have settled on a two-step procedure for dealing with collective actions under the FLSA." *Rottman*, 735 F. Supp. 2d at 990 (quoting *Hundt v. DirectSat USA, LLC,* 2010 WL 2079585, at *2 (N.D. Ill. May 24, 2010)). At the first step, known as the "notice" stage, "[a] named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores,* 289 F.Supp.2d at 1045 (citing *Taillon v. Kohler Rental Power, Inc.,* 2003 WL 2006593, at *1 (N.D.Ill. Apr.29, 2003)) (internal quotation marks omitted). "Th[e] determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.'" *Comer*, 454 F. 3d at 547.

"[D]istrict courts generally allow the lead plaintiffs to 'show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Fisher v. Michigan Bell Telephone Co.*, 665 F. Supp. 2d 819, 825 (E.D. Mich. 2009) (quoting *Olivo v.*

*GMAC Mtg. Corp.*, 374 F. Supp.2d 545, 548 (E.D. Mich. 2004)). "Since the 'similarly situated' standard is a liberal one, it 'typically results in conditional certification of a representative class.'" *Rottman*, 735 F. Supp.2d at 990 (quoting *Cameron–Grant v. Maxim Healthcare Services, Inc.,* 347 F.3d 1240, 1243 n. 2 (11th Cir. 2003) (quotation marks omitted)); *Smallwood v. Illinois Bell Telephone Co.,* 710 F.Supp.2d 746, n. 4 (N.D.Ill.2010).

Conditional certification typically takes place early on in the case, prior to discovery. *See Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007) ("the court may allow what is sometimes termed pretrial conditional certification, which allows notice of the case to be sent to the similarly situated employees, who have the opportunity to opt in as plaintiffs. The case then proceeds as a collective action through further discovery."); *Persin v. CareerBuilder, LLC,* 2005 WL 3159684 at *1 (N.D. Ill. Nov. 23, 2005) ("it is not until potential plaintiffs have been given a chance to 'opt-in' to the collective action and discovery is complete that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action.").

As a result, at the conditional certification stage, the court does not evaluate the merits of the case and does not make credibility determinations. *Nicks v. Koch Meat Co., Inc.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017 (quoting *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013)) ("At this initial stage, '[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.'"); *Larsen v. Clearchoice Mobility, Inc.*, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011) ("[T]he court does not resolve factual disputes or decide substantive issues going to the merits."); *Nehmelman.*, 822 F.Supp.2d at 751("[T]he court does not consider the merits of a plaintiff's claims, or witness credibility"); *see also Betancourt v. Maxim Healthcare Servs., Inc.*,

2011 U.S. Dist. LEXIS 43228 , at *21 (N.D. Ill. Apr. 21, 2011) ("Defendant's argument that plaintiff and the proposed class are not similarly situated with respect to how they actually perform their jobs and the issue of whether defendant properly classifies all or some of its Recruiters as exempt employees are more appropriately decided on a more developed factual record.").

Certification and court-supervised notice are typically granted under § 216(b). *Hipp v. Liberty Nat'l Ins. Co.*, 252 F. 3d 1208, 1218 (11th Cir. 2001). In this case, the remedial purposes of the FLSA, as well as the goals of judicial economy, weigh heavily in favor of certification and issuing notice to all similarly situated workers at the Pattiki Complex and Hamilton County Complex. *See Hoffman-La Roche*, 493 U.S. at 170. Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact. . . ." *Id.* Further, a collective action gives these employees an opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Id.*

**B.     Plaintiff has Amply Met his Burden of Production and has a Made a Modest Factual Showing that a Group of Similarly Situated Individuals Exist**

Where, as here, the Plaintiff has established the existence of common, FLSA-violating policies which applied to the collective action members, conditional certification is warranted. Plaintiff has alleged that he and other hourly mine workers at the Illinois Mines 1) have all worked for Defendants as coal miners; 2) were required to perform work prior to and after their shifts, for which they were not compensated; and 3) received bonus compensation which was not factored into their overtime pay rate as required by the FLSA.[10] Defendants' compensation policies, which are at issue in this case, are attested to by the detailed Complaint and supporting declarations of

---

[10] Courts in this Circuit do not require a showing of interest at the conditional certification stage. As one court explained, "Defendants' argument that [plaintiff] must produce evidence that other employees wish to join the class before the class notice may be sent puts the cart before the horse." *Heckler*, 502 F. Supp. 2d at 780. However, at this early stage, two individuals in addition to Plaintiff have filed opt-in consent forms to join the case. *See* Dkts. 19, 28.

Rickey Cates and Danny Knight, as well as the filings in the *Branson* and *Brewer* cases, and the similar complaints filed in federal and state courts in Kentucky, West Virginia, Illinois and Indiana, which establish to the existence of nearly identical policies at other mines operated by Alliance Coal.[11]

The *Branson* Court found that Coal Miners at three other of Defendants' Complexes in Kentucky were similarly situated, such that notice should issue. *See* Ex. H. Notice has been sent to more than 1,500 Coal Miners who worked at the mines at issue in Kentucky. The *Brewer* court has likewise found this week that Coal Miners in Eastern Kentucky are similarly situated. *See* Ex. I. This Court should follow suit on an expedited basis, so that Coal Miners who worked for Alliance Coal in Indiana are similarly notified of their rights to joint this lawsuit and potential recover unpaid wages.[12]

As noted above, in the *Branson* case, which involves nearly identical claims regarding three mines operated by Alliance Coal in Kentucky, the court granted conditional certification, explaining that "Plaintiffs have made a modest factual showing" that "all employees needed to don (and doff) their mining gear before (and after) their shifts and….needed to be fifteen minutes early" and "even if discovery reveals differences between employees based on overtime payments and meal breaks [they] would still be similarly situated for their donning-and-doffing and fifteen-minutes-early allegations." *Branson*, 2021 WL 1550571, at *5. Likewise, in *Brewer*, the Court

---

[11] At the conditional certification stage, "[t]he court analyzes the pleadings and any affidavits" to determine whether "threshold showing" is made. *Knox*, 208 F. Supp. 3d at 958.

[12] At the conditional certification stage, "[t]he Court analyzes the pleadings and any affidavits to determine whether [the required] modest showing is made." *Williams v. Angie's List, Inc.*, 223 F. Supp. 3d 779, 783 (S.D. Ind. 2016) (citing *Knox v. Jones Group*, 208 F.Supp.3d 954, 958, 2016 WL 4943825, at *2 (S.D. Ind. Sept. 16, 2016)).

found that "Plaintiff has made the requisite 'modest factual showing" that Defendants have a common policy of requiring mine workers at the Excel mine to work prior to and after their scheduled shifts without pay and of failing to include bonuses in overtime pay calculations." *See* Ex. I, *Brewer*, 2021 WL 3057379, at *2. The same result should follow here.

While Defendants may point to differences among supervisors, job functions, and mine locations in this case, such factual distinctions do not counsel against conditional certification, as courts have repeatedly made clear in off-the-clock cases. *Nehmelman*, 822 F. Supp. 2d at 753–54 ("The mere fact that some supervisors may have exhibited favoritism in enforcing the rule, however, does not unequivocally prove that the rule does not exist or is incapable of class-wide analysis... Plaintiff has presented sufficient evidence that she is similarly situated to other Dealers and Slot Reps with respect to an unwritten policy requiring them to clock in 7 minutes early); *Madden,* 2009 WL 4757269, at *3 ("courts in this district have conditionally certified off-the-clock collective actions where the proposed participants had different job titles and worked at different locations"); *see also Russell,* 575 F.Supp.2d at 937 (conditionally certifying off-the-clock collective action to employees in four separate call centers); *Heckler,* 502 F.Supp.2d at 781 (conditionally certifying off-the-clock collective action including a group of employees with different job functions); *Nicks*, 265 F. Supp. 3d at 855 ("similarly situated class members can have different supervisors and work at different locations as long as they have comparable work functions.").

Moreover, Defendants' anticipated arguments that conditional certification is improper or should be delayed or denied based on Plaintiffs' allegations that the Defendants that comprise Alliance Coal operate as alter egos and/or joint employers should be rejected. The *Brewer* Court's decision authorizing notice to be sent to Alliance coal miners at issue in those Kentucky mines is

14

particularly instructive. In *Brewer*, the Court considered and rejected each of Defendants' six arguments against conditional certification, including its argument that conditional certification should be denied or delayed based on its joint employer/ alter ego arguments. *Brewer*, 2021 WL 3057379, at *4.

Specifically, the *Brewer* Court held that "[a]ccordingly, in light of the lenient standard at the conditional certification stage, courts often defer the determination of whether multiple defendants should be treated as a single employer until the decertification stage." *Id.* at *4. The *Brewer* Court held that Plaintiffs' allegations in the complaint "sufficiently establish that the Defendants are joint employers for purposes of sending notice to potential opt-in plaintiffs, and the Court will defer making a final determination on this issue until the decertification stage." *Id.* (citing *Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 WL 4743637, at *4 (S.D. Ohio Sept. 29, 2019) (deferring determination of whether related employers should be considered joint employers under the FLSA for the decertification stage)).

This Court should do the same. District courts have routinely held that "whether [Defendants] are joint employers and/or subject to alter ego liability under the FLSA or accompanying federal regulations *is not relevant concerning conditional class certification*." *Young v. Act Fast Delivery of West Virginia, Inc.*, No. 5:16-cv-978, 2017 WL 3445562, at *3 (S.D. W. Va. Aug. 10, 2017) (emphasis added). *See also Nicks*, 265 F. Supp. 3d 841 at 853 ("Given the factual issues involved, however, the joint employer question is typically addressed at the decertification or summary judgment stage.").

Whether or not the Parent Alliance Coal entities are ultimately found to be joint employers and/or alter egos does not change the composition of the collective here. Here, no matter how the Court ultimately resolves the joint employer question, the same group of coal miners will be

pursuing the same claims for non-payment of wages based on the work performed.  The question of joint employer in this case concerns only whether all of the Alliance Coal entities should be treated as one and/or may be held responsible for this alleged non-payment of wages, and whether the Coal Miners who worked at the Illinois Mines can recover only from the relevant Alliance Coal subsidiary entities here – Hamilton County Coal, LLC and White County Coal, LLC, or from the related Alliance Coal conglomerates who maintain the operating account for this subsidiary. It simply addresses who must pay in the event of liability, and all the Coal Miners are similarly situated with respect to that question. There is simply no reason to delay sending Court-authorized notice prior to resolving the joint employer/ alter ego question in this case. *See Branson*, 2021 WL 1550571, at *1, *4-5 (conditionally certifying class even though Alliance Coal has made and intends to make similar arguments regarding jurisdiction, alter ego and joint employer); *Brewer*, Ex. I, p. 8 (rejecting Defendants' argument that "Plaintiff has not demonstrated that he or the potential class members were employed by any of the entity Defendants besides Excel Mining, LLC" and noting that this argument is properly considered on decertification).

### C. Plaintiff's Proposed Notice and Plan of Distribution is Proper

The Court should approve Plaintiff's proposed notice plan. A notice plan similar to the one that was negotiated by the parties and approved in the *Branson* Court. *See* Ex. P, *Branson*, No. 4:19-cv-155, Dkt. 176 , at pp. 7-8 (authorizing notice to be sent to the Kentucky Coal Miners who worked at the three Kentucky mines at issue via email, hard copy mail, and posting). Plaintiffs' proposed Notice, attached as **Exhibit A**, is "timely, accurate and informative." *Hoffmann-La Roche*, 493 U.S. at 172. The format of the notice proposed by Plaintiff in this case has been approved by a number of courts around the country. The "efficiencies enabled by [collective action] can only be realized if 'employees receiv[e] accurate and timely notice concerning the

pendency of the collective action, so that they can make informed decisions about whether to participate." *Knox*, 208 F. Supp. 3d at 963. In *Cobb*, the court approved notice to members of the collective via U.S. Mail, a case website providing Notice of Right to Join Lawsuit and Consent-to-Join Form and e-mail communications. 2020 WL 4351349, at *4.

Plaintiff seeks leave to send the notice and consent form by First Class Mail, e-mail[13] and text message[14] to all individuals who work or have worked for Defendants in Illinois within the last three years[15] and who elect to opt in to this action.[16] According to a Pew Research Institute report, approximately 36 million Americans move each year and often take their cell phone numbers with them: 10 percent of U.S. adults have cell phone numbers that don't match the state they live in; and 40 percent of urban dwellers have a number that doesn't match the

---

[13] E-mail is increasingly recognized by courts as an effective method for providing notice. *See, e.g., Syed v. M-I, L.L.C.*, 2014 WL 6685966, at *8 (E.D. Cal. Nov. 26, 2014) (stating: "email is an increasingly important means of contact" and ordering that notice be sent via U.S. Mail and email); *Guy v. Casal Institute of Nevada, LLC*, 2014 WL 1899006 (D. Nev. May 12, 2014) ("email is an efficient, reasonable, and low cost supplemental form of notice"); *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (granting request for notice by e-mail); *Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 962 (W.D. Tex. 2016) (same); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (same).

[14] A number of courts in recent years have recognized that notice by text message is an appropriate and effective way of informing them of their right to opt in to a case under the FLSA and have approved such notice. *See, e.g., Avendano v. Averus, Inc.*, No. 14-cv-01614 (D. Colo. Oct. 25, 2016); *Vasto v. Credico (USA) LLC*, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (approving notice by mail, e-mail and text message); *Eley v. Stadium Group, LLC*, 2015 WL 5611331, at *3 (D. D.C. Sept. 22, 2015) (approving distribution of FLSA collective action notices via mail, email and text message, holding that such means of distribution are "in line with what has been approved in other FLSA collective actions.") (citing *Bhumithanarn v. 22 Noodle Market Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) ("notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.")).

[15] A three-year notice period is proper at the conditional certification stage where, as here, Plaintiffs allege a "willful" violation of the FLSA. *See, e.g., Frebes v. Mask Rests., LLC*, 2014 U.S. Dist. LEXIS 63531, at *12 (N.D. Ill. May 8, 2014) ("because there is not a high bar for giving notice under the [FLSA's] three-year statute of limitations, we will apply a three-year statute of limitations at this [i.e., notice] stage in the litigation."

city where they live.[17]  This phenomenon has led courts to conclude that email addresses and cell phone numbers are "the most consistent and reliable method of communication" because "traditional methods of communication via regular mail and land line telephone numbers [have] quickly become obsolete."  *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F.Supp.3d 707, 711 (D.S.C. 2015).

In order to effectuate this notice, Plaintiff requests that the Court order Defendants to produce, within 14 days of its Order granting conditional certification, the names, last known mailing and email addresses, and telephone numbers for all of these individuals. Courts granting conditional certification routinely order defendants to produce this information to facilitate notice to the collective.[18] Plaintiff also requests that the notice also be posted in visible locations at the Pattiki Complex and Hamilton County Complex.[19] Once Defendants have produced the Collective List and Notices has been issued, collective action members should have 90 days to return a signed consent form.[20]

---

[17] https://pewrsr.ch/2Ua8kht (last visited April 19, 2021).

[18] *See Sylvester,*, 2013 WL 5433593, at *6 ("the defendants should produce the names, unique employee ID numbers, addresses, and telephone numbers of all potential opt-in class members to the plaintiffs' counsel."); *Nehmelman*, 822 F. Supp. 2d at 767 (ordering defendants to provide "names, addresses, email addresses and telephone numbers" for potential opt-ins to plaintiffs); *Hoffman-LaRoche*, 493 U.S. at 170 (holding that district courts have the authority to compel the production of contact information of employees for purposes of facilitating notice in FLSA collective actions).

[19] *See Putman v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. 264 at 277-78 (S.D. Iowa 2011) (noting that "courts routinely approve requests to post notice in common areas or on employee bulletin boards, even if there is an alternative form of notice") (collecting cases); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) ("Pret stated at argument that posting in the Pret stores will be unnecessarily disruptive and will start a conversation among employees. That argument is unpersuasive. A purpose of notice *is* to start a conversation among employees, so as to ensure that they are notified about potential violations of the FLSA and meaningfully able to vindicate their statutory rights."); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.").

[20] *See*, *e.g.*, *Imel,* 2020 WL 2840022 at *7 (providing for 60 days' notice); *Swarthout*, 2011 WL

Finally, Plaintiff requests that a reminder notice be sent 45 days prior to the close of the opt-in period. In *Cobb*, the court approved a similar follow-up email message to be sent sent thirty days after the initial notice. 2020 WL 4351349, at *4; *see also Craft v. Ray's LLC*, No. 1:08CV00627-RLY-JMS, 2008 WL 5458947, at *3 (S.D. Ind. Dec. 31, 2008) (Young, J.) (authorizing plaintiffs to send a reminder notice midway through the notice period to individuals who do not respond to the original notice). It is well documented that people often disregard collective action notices.  *See* Andrew C. Brunsden, Hybrid Class Actions, *Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008).  Granting a reminder notice will help facilitate the underlying and broad remedial purpose of the FLSA of ensuring that potential collective members have the opportunity to learn about and join the lawsuit if they so choose. "Rather than being redundant, a reminder letter gives notice to putative plaintiffs who do not receive, open, or view the initial letter; it also helps putative plaintiffs who misplace or forget about the initial letter." *McGhee v. TOMS King, LLC*, 2:19-cv-01470-RJC, 2021 WL 1176097, at *10 (W.D. Pa. Mar. 29, 2021) (internal citations omitted). Further, the reminder notice causes Defendant no prejudice.

## IV     CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Conditional certification on an expedited basis and authorize Plaintiffs to issue notice of this action to all hourly mine workers who have worked for Defendants at the Illinois Mines between April 9, 2018 and

---

6152347 at *5 (finding a 90–day response time is not inappropriate or excessive); *see also Benion v. Lecom, Inc.*, No. 15-14367, 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016) (*citing Hoffmann-La Roche*, 493 U.S. at 170) ("One of the purposes of judicially supervised notice is to protect the claims of opt-ins for unpaid overtime compensation … That interest, of course, must be balanced with expeditious and prudent case management. The 90-day notice period proposed by the plaintiffs properly strikes that balance.").

the present.

Dated: July 23, 2021

Respectfully submitted,

/s/ Sarah Schalman-Bergen
Sarah R. Schalman-Bergen, *pro hac vice*
Olena Savytska, *pro hac vice forthcoming*
Thomas Fowler, *pro hac vice forthcoming*
Krysten L. Connon, *pro hac vice forthcoming*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
ssb@llrlaw.com
osavytska@llrlaw.com
tfowler@llrlaw.com
kconnon@llrlaw.com

Katrina Carroll
CARLSON LYNCH
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
kcarroll@carlsonlynch.com

Camille Fundora Rodriguez, *pro hac vice*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4620
crodriguez@bm.net

*Attorneys for the Plaintiff and the*
*Proposed FLSA Collective and Illinois Class*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 23rd day of July, 2021.


s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen