IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICKEY CATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-CV-377-SMY |
| | ) |
| ALLIANCE COAL, LLC et al, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff Rickey Cates's Motion for Conditional Certification and to Facilitate Notice under Section 126(b) of the Fair Labor Standards Act ("FLSA") and Illinois State Law (Doc. 29). Defendants Alliance Coal, LLC, Alliance Resource Partners, L.P., Alliance Resource Operating Partners, L.P., Alliance Resource Management GP, LLC, and Defendants Hamilton County Coal, LLC and White County Coal, LLC responded in opposition (Docs. 47 and 48). For the following reasons, Plaintiff's Motion is **GRANTED in part**.

## BACKGROUND

Plaintiff Rickey Cates filed a collective and class action Complaint ("Complaint") individually, and on behalf of all other similarly situated persons, alleging that Defendants unlawfully failed to pay coal miners for "off-the clock" work, overtime, and non-discretionary bonuses (Doc. 1). More specifically, Cates alleges that the miners in question worked in Defendants' Hamilton Mining Complex in Hamilton County, Illinois and Pattiki Complex in White County, Illinois ("the Illinois Mines"), that Defendants herein own and control the Subsidiary Defendants – Hamilton County Coal, LLC (Hamilton Mining Complex) and White County Coal, LLC (Pattiki Complex), and that he and other similarly situated current and former

miners at the Illinois Mines are/were employed in non-exempt positions under the FLSA and the Illinois Minimum Wage Law.

Cates filed the instant Motion for Conditional Class Certification and to Facilitate Notice to "all current and former non-exempt employees who performed work in underground mines or surface coal preparation plants in Illinois, and who were employed by Defendants between April 9, 2018, and the present" (Doc. 29 at 1-2). Defendants argue that conditional certification should be denied because Cates failed to demonstrate that the Court could manage and resolve his claims on a collective basis, that Cates' joint employer argument fails as a matter of law, and that Cates' proposed form of notice is improper.

## DISCUSSION

The FLSA allows workers to bring an action on a collective basis for themselves "and other employees similarly situated." 29 U.S.C. § 216(b). Relatedly, "[t]he court may allow what is sometimes termed pretrial conditional certification, which allows notice of the case to be sent to the similarly situated employees, who have the opportunity to opt in as plaintiffs. The case then proceeds as a collective action through further discovery." *Persin v. CareerBuilder, LLC,* 2005 WL 3159684 at *1 (N.D. Ill. Nov. 23, 2005).

"A named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.,* 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003) (citing *Taillon v. Kohler Rental Power, Inc.,* 2003 WL 2006593, at *1 (N.D. Ill. Apr.29, 2003)). "This determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006). To meet the requirement the named

plaintiff must provide an affidavit, declaration, or other support beyond the allegations to make a modest showing that other similarly situated employees exist. *Swarthout v. Ryla Teleservices, Inc.,* No. 4:11–CV–21–RM, 2012 WL 6152347, at *3 (N.D. Ind. 2011).

Here, Cates submitted his own Declaration (Doc. 31-12), averring as follows: upon arriving at the mine, he and the putative collective action members had to go to the bathhouse to put on special protective clothing and protective gear including boots, work belt, helmet, lamp, reflective gear, hearing protection, safety glasses, respirator, and gloves (Doc. 31-12 at 8). Next, they would go to other locations at the mine to gather additional materials, including a methane spotter, a light, and a radio for communication, and pick up any additional tools such as wrenches, pliers, hammers, channel locks, chisel, and torches. (*Id.* at 9, 11). Such activities required him to arrive at work an hour or more before his scheduled start time; but, he did not get paid until the actual start of his shift time. (*Id.* at 12, 15). Upon completing his shift, Cates then had to change out of his clothes, shower, return his personal protective gear and tools. (*Id.* at 13). This was done after his shift had ended so that he was not compensated for said time. (*Id.* at 15).

Cates also submitted a Declaration from Danny Knight in support of the instant motion (Doc. 31-13). Knight attests that he was employed as a coal miner for Alliance Coal at the Hamilton Mining Complex between approximately December 2016 and April 2019. (*Id.* at 4). He would arrive at the mine before his scheduled shift and would go to the bathhouse to put on his personal protective clothing before going to the staging area to gather tools. (*Id*. at 10, 11). He would then attend a safety meeting before he was allowed to "clock in" for his shift no earlier than six minutes before his scheduled shift time. (*Id.* at 12-14). Upon completing his shift, he was required to change, shower, and return all protective gear and tools. (*Id.* at 15). All of these pre- and post- shift activities took him approximately an hour each day to complete; he was not

compensated for that time. (*Id.* at 17). He was paid a royalty bonus on a number of occasions, which was not factored into his overtime pay rate. (*Id.* at 18).

Defendants argue that the evidence demonstrates that other workers did not share the experiences that Cates alleges; rather, workers arrived at their shift start times, arrived fully dressed and ready, attended any safety meetings "on the clock," and were compensated for all their hours worked (Doc. 47 at 3). But the Court will not weigh the competing evidence or otherwise determine the merits of Cates' claims at this juncture. *See Bergman*, 949 F. Supp. 2d at 855-56 ("At this initial stage, '[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.'"). The Declarations of Cates and Knight are sufficient to satisfy the "similarly situated" requirement.

Defendants also argue that Cate's request is overbroad, in that he "…seeks to represent at least 350 potential collective action members, who worked in at least 41 different positions, for two different employers (located 33 miles apart), at two different underground coal mines, utilizing two different methods of underground coal mining, and at two different above-ground coal preparation plants" (Doc. 47). These factors, however, do not counsel against conditional certification. *See Nehmelman v. Penn National Gaming, Inc.*, 822 F. Supp. 2d 745, 753–54 (N.D. Ill. 2011). The "question is simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected" *Davenport v. Charter Commc'ns, LLC*, No. 4:12CV00007 AGF, 2015 U.S. Dist. LEXIS 3409, at *16-17 (E.D. Mo. 2015). At this point, the Court finds that they do not.

Next, Defendants argue that conditional certification is improper, should be delayed, or should be denied based on Cates' allegation that Defendants comprising Alliance Coal operate as alter egos and/or joint employers; noting that Cates does not allege that he was hired by, supervised

by, performed work for, or was compensated by any of these defendants. However, as district courts have routinely observed, "whether [Defendants] are joint employers and/or subject to alter ego liability under the FLSA or accompanying federal regulations *is not relevant concerning conditional class certification.*" *Young v. Act Fast Delivery of West Virginia, Inc.*, No. 5:16-cv-978, 2017 WL 3445562, at *3 (S.D. W. Va. Aug. 10, 2017); *see also Nicks*, 265 F. Supp. 3d 841 at 853. Here, the joint employer issue concerns only whether all of the defendant entities should be treated as one and/or may be held responsible for this alleged non-payment of wages or whether the coal miners who worked at the Illinois Mines can recover only from the relevant Alliance Coal subsidiary entities, Hamilton County Coal, LLC and White County Coal, LLC, or from the related Alliance Coal conglomerates. Thus, there is no basis to delay sending court-authorized notice prior to resolving that issue.

Cates seeks leave to send the Notice and Consent Form by First Class Mail, e-mail, and text message to all individuals who work or have worked for Defendants in Illinois within the last three years and who elect to opt-in to this action, and proposes the following notice plan: (1) that the Court order Defendants to produce the names, last known mailing and email addresses, and telephone numbers for all of these individuals within 14 days of its Order granting conditional certification; (2) that the Notice be posted in visible locations at the Pattiki Complex and Hamilton County Complex; (3) that once Defendants have produced the collective list and notice has been issued, collective action members will have 90 days to return a signed consent form; and (4) that a reminder notice be sent 45 days prior to the close of the opt-in period.

Defendants correctly note the intrusive nature of unsolicited text messages and that reminder notices could be misinterpreted as the Court encouraging individuals to opt in (shortening the notice period to 60 days will sufficiently ensure that potential collective members have an

opportunity to learn about and join the lawsuit if they so choose and return a signed consent form). As such, the Court will not authorize notice via text message, posting at the Pattiki Complex and Hamilton County Complex, or reminder notices absent some showing that U.S. mail and email notice will not reach prospective class members.

Lastly, Defendants argue that any notice referencing "Alliance" or "Alliance Coal," along with any references to alleged joint employers, should be stricken to avoid implying that the Court has made any judicial finding as to employer status. Defendants' concerns are premature and unfounded. Cates' proposed Notice mentions the parties by name but does not discuss or imply employer status. Moreover, the proposed Notice clearly states in bold text that the Court has made no decision as to the Plaintiff's or Defendants' positions, does not express an opinion whether one should or should not join the lawsuit, and is not an indication on how the Court may rule in the future. Accordingly, all parties will be named as proposed.

## CONCLUSION

Plaintiff's Motion for Conditional Certification and to Facilitate Notice under Section 126(b) of the Fair Labor Standards Act ("FLSA") and Illinois State Law (Doc. 29) is **GRANTED in part**.

Plaintiff is **GRANTED** leave to send the proposed Notice and Consent Form by First Class Mail and e-mail to all individuals who work or have worked for Defendants in Illinois within the last three years and who elect to opt-in to this action.

Once Defendants have produced the Collective List and Notice has been issued, collective action members will have **60 days** to return a signed consent form.

Defendants are **DIRECTED** to produce to Plaintiff the names and last known mailing and email addresses for all individuals who work or have worked for Defendants in Illinois from April 9, 2018 - present within **14 days** of the entry of this Order.

**IT IS SO ORDERED.**

**DATE: September 27, 2022**

*[signature]*

**STACI M. YANDLE**
**United States District Judge**